UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| HEATHER M. STEPHENS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>URANIUM ENERGY CORP., AMIR ADNANI, and MARK A. KATSUMATA,<br><br>Defendants. | Case No. 4:15-cv-1862<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Heather M. Stephens ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Uranium Energy Corp., ("Uranium Energy" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Uranium Energy securities between October 14, 2014 and June 17, 2015, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Uranium Energy Corp. engages in the exploration, extraction, and processing of uranium concentrates on projects located in the United States and the Republic of Paraguay. As of July 31, 2014, it had mineral rights in uranium projects located in the states of Arizona, Colorado, New Mexico, Texas, and Wyoming, as well as in the Republic of Paraguay. The company was formerly known as Carlin Gold Inc. and changed its name to Uranium Energy Corp. in January 2005. Uranium Energy Corp. was incorporated in 2003, is based in Corpus Christi, Texas, and its shares trades on the NYSE under the ticker symbol "UEC".

3. Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (1) Uranium Energy stock achieved an unsustainable valuation by using paid stock promoters, yet failed to disclose the use of such promoters in its regulatory filings pursuant to Section 17(b) of the Securities Act of 1933; and (2) as a result of the foregoing, Uranium Energy's public statements were materially false and misleading at all relevant times.

4. On June 18, 2015, an article published by *TheStreetSweeper.org* reported that Uranium Energy was using undisclosed paid stock promotors to increase the value of Uranium Energy shares. The article stated, in part:

> UEC has been running up on promotions coming from Twitter, Seeking Alpha authors and reportedly hype paid by the company itself.
>
> Here is an example of a bullish tweet:
>
> 
>
> Here[1] is one Seeking Alpha author's bullish headline: "Uranium Energy Corp. Will Ride The Uranium Bull."
>
> Though we prefer this[2] SA article: "Uranium Energy Overvalued Even At $2 – Better Choices For Speculating On Uranium Abound."
>
> And here[3] is the hotstocked.com piece, titled: "And the Pump Initiator is … ShazamStocks Powered by Uranium Energy Corp."
>
> Additionally, insider buying has served as a promotional tool. But investors shouldn't be thrown off by the CEO, who earns $640,000, making a small 34,000-share stock purchase. We contend it's window dressing …. A little more come hither.

5. According to a report by *hotstocked.com*, quoted in the article above, Uranium Energy has caused to be published at least eight separate stock promotions, for which the Company, or third parties controlled by the Company, paid over $200,000. Some of the stock promotion campaigns, from promotors named "LightningStockPicks," "Micro Stock Profit," "InvestorSoup.com," "The Penny Stocks Finder," "Stock Preacher," and "Future Money Trends" include headlines such as "Chart Is Glowing Green! (UEC) #1 NYSE Play Today," "UEC Just Hit Critical Mass," and "(UEC) #1 NYSE Play Today."

---

[1] http://seekingalpha.com/article/3260005-uranium-energy-corp-will-ride-the-uranium-bull
[2] http://seekingalpha.com/article/3254705-uranium-energy-overvalued-even-at-2-better-choices-for-speculating-on-uranium-abound
[3] https://www.hotstocked.com/article/44432/and-the-pump-initiator-is-shazamstocks-powered.html

6.     On the following day, the Company issued a press release denying the allegations and stating that the article published by *TheStreetSweeper.org* had no merit. However, the article did not address the allegations related to the undisclosed paid stock promotions and market was unconvinced.

7.     As a result of this news, shares of Uranium Energy continued to fall, dropping $0.62 or over 25.6% on unusually heavy volume, to as close at $1.80 on June 19, 2015. Over two trading days, shares fell $0.80 or over 30.7%.

8.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

11.    Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as defendant is headquartered in this District and a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

12.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13. Plaintiff, as set forth in the attached Certification, acquired Uranium Energy securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

14. Defendant Uranium Energy is a Nevada corporation with its principal executive offices located at 500 North Shoreline Ste. 800N, Corpus Christi, TX 78401. Uranium Energy's common stock trades on the NYSE under the ticker symbol "UEC."

15. Defendant Amir Adnani ("Adnani") has served at all relevant times as the Company's Chief Executive Officer ("CEO") President and Executive Director.

16. Defendant Mark A. Katsumata ("Katsumata") has served at all relevant times as the Company's Chief Financial Officer ("CFO"), Principal Accounting Officer, Secretary, and Treasurer.

17. The defendants referenced above in ¶¶ 15-16 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18. Uranium Energy Corporation is a uranium production, development and exploration company. The Company's fully licensed and permitted Hobson processing facility is central to all of its projects in South Texas, including the Palangana in-situ recovery project, which is ramping up to full production this year, and the Goliad in-situ recovery project.

### Securities Laws On Stock Promotion

19. Section 17(b) of the Securities Act of 1933 [15 U.S.C. 77q(b)] is commonly known as the "anti-touting" provision. It prohibits publicizing information about a security

5

without "fully disclosing" any consideration received or to be received, directly or indirectly, from the issuer, and the amount thereof. *Id.* Moreover, an of issuer securities is also required to disclose the details of its relationship with a stock promoter in its regulatory filings.

**Materially False and Misleading**
**Statements Issued During the Period**

20. On October 14, 2014, the Company filed a Form 10-K with the SEC which was signed by Defendants Adnani and Katsumata, announcing its financial and operating results for the fourth fiscal quarter and full fiscal year ended July 31, 2014 (the "2014 10-K"). For the fourth fiscal quarter, the Company announced a net loss of $6.22 million or $0.07 per share on a diluted basis, on no revenue, compared to a net loss of $5.08 million, or $0.06 per share on a diluted basis, on revenue of $1.98 million for same period in the prior year. For the full fiscal year, the Company reported a net loss of $25.98 million, or $0.29 per diluted share, on no revenue, compared to a net loss of $21.86 million, or $0.26 per diluted share, on revenue of $9.03 million for the prior year. In addition, the 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Adnani and Katsumata, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

21. In the 2014 10-K, the Company stated, in part:

> To the best of our knowledge, our operations are in compliance, in all material respects, with all applicable laws, regulations and standards. If we become subject to liability for any violations, we may not be able or may elect not to insure against such risk due to high insurance premiums or other reasons. Where coverage is available and not prohibitively expensive relative to the perceived risk, we will maintain insurance against such risk, subject to exclusions and limitations. However, we cannot provide any assurance that such insurance will continue to be available at reasonable premiums or that such insurance will be adequate to cover any resulting liability.

22. On December 10, 2014, the Company filed a Form 10-Q with the SEC which was signed by Defendants Adnani and Katsumata, announcing its financial and operating results for the first fiscal quarter ending October 31, 2014 (the "1Q 10-Q"). The Company reported a net loss of $6.73 million, or $0.07 per diluted share, on no revenue, compared to a net loss of $5.88 million, or $0.07 per diluted share, on no revenue, for the same period in the prior year. In addition, the 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Adnani and Katsumata, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23. In the 1Q 10-Q, the Company stated, in part:

> To the best of our knowledge, our operations are in compliance, in all material respects, with all applicable laws, regulations and standards. If we become subject to liability for any violations, we may not be able or may elect not to insure against such risk due to high insurance premiums or other reasons. Where coverage is available and not prohibitively expensive relative to the perceived risk, we will maintain insurance against such risk, subject to exclusions and limitations. However, we cannot provide any assurance that such insurance will continue to be available at reasonable premiums or that such insurance will be adequate to cover any resulting liability.

24. On March 12, 2015, the Company filed a Form 10-Q with the SEC which was signed by Defendants Adnani and Katsumata, announcing its financial and operating results for the second fiscal quarter ending January 31, 2015 (the "2Q 10-Q"). The Company reported a net loss of $5.88 million, or $0.06 per diluted share, on no revenue, compared to a net loss of $7.18 million, or $0.08 per diluted share, on no revenue, for the same period in the prior year. In addition, the 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Adnani and Katsumata, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

25.     In the 2Q 10-Q, the Company stated, in part:

To the best of our knowledge, our operations are in compliance, in all material respects, with all applicable laws, regulations and standards. If we become subject to liability for any violations, we may not be able or may elect not to insure against such risk due to high insurance premiums or other reasons. Where coverage is available and not prohibitively expensive relative to the perceived risk, we will maintain insurance against such risk, subject to exclusions and limitations. However, we cannot provide any assurance that such insurance will continue to be available at reasonable premiums or that such insurance will be adequate to cover any resulting liability.

26.     On June 9, 2015, the Company filed a Form 10-Q with the SEC which was signed by Defendants Adnani and Katsumata, announcing its financial and operating results for the third fiscal quarter ending April 30, 2015 (the "3Q 10-Q"). The Company reported a net loss of $5.35 million or $0.06 per diluted share, on no revenue, compared to a net loss of $6.70 million or $0.07 per diluted share, on no revenue, for the same period in the prior year. In addition, the 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Adnani and Katsumata, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     In the 3Q-10-Q, the Company stated, in part:

To the best of our knowledge, our operations are in compliance, in all material respects, with all applicable laws, regulations and standards. If we become subject to liability for any violations, we may not be able or may elect not to insure against such risk due to high insurance premiums or other reasons. Where coverage is available and not prohibitively expensive relative to the perceived risk, we will maintain insurance against such risk, subject to exclusions and limitations. However, we cannot provide any assurance that such insurance will continue to be available at reasonable premiums or that such insurance will be adequate to cover any resulting liability.

28.     The statements referenced in ¶¶ 20-27 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (1) shares of

Uranium Energy stock achieved an unsustainable valuation by using paid stock promoters, yet failed to disclose the use of such promoters in its regulatory filings pursuant to Section 17(b) of the Securities Act of 1933; and (2) as a result of the foregoing, Uranium Energy's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

29.     On June 18, 2015, an article published by *TheStreetSweeper.org* claimed that Uranium Energy was using undisclosed paid stock promotors to increase the value of Uranium Energy shares. The article stated, in part:

> UEC has been running up on promotions coming from Twitter, Seeking Alpha authors and reportedly hype paid by the company itself.
>
> Here is an example of a bullish tweet:
>
> 
>
> Here[4] is one Seeking Alpha author's bullish headline: "Uranium Energy Corp. Will Ride The Uranium Bull."
>
> Though we prefer this[5] SA article: "Uranium Energy Overvalued Even At $2 – Better Choices For Speculating On Uranium Abound."
>
> And here[6] is the hotstocked.com piece, titled: "And the Pump Initiator is … ShazamStocks Powered by Uranium Energy Corp."
>
> Additionally, insider buying has served as a promotional tool. But investors shouldn't be thrown off by the CEO, who earns $640,000, making a small 34,000-share stock purchase. We contend it's window dressing …. A little more come hither.

30.     According to a report by *hotstocked.com*, quoted in the article above, Uranium Energy has caused to be published at least eight separate stock promotions, for which the

---

[4] http://seekingalpha.com/article/3260005-uranium-energy-corp-will-ride-the-uranium-bull
[5] http://seekingalpha.com/article/3254705-uranium-energy-overvalued-even-at-2-better-choices-for-speculating-on-uranium-abound
[6] https://www.hotstocked.com/article/44432/and-the-pump-initiator-is-shazamstocks-powered.html

Company, or third parties controlled by the Company, paid over $200,000. Some of the stock promotion campaigns, from promotors named "LightningStockPicks," "Micro Stock Profit," "InvestorSoup.com," "The Penny Stocks Finder," "Stock Preacher," and "Future Money Trends" include headlines such as "Chart Is Glowing Green! (UEC) #1 NYSE Play Today," "UEC Just Hit Critical Mass," and "(UEC) #1 NYSE Play Today."

31. As a result of this news, shares of Uranium Energy fell $0.18 or over 6.9% on unusually heavy volume, to as close at $2.42 on June 18, 2015.

32. On the following day the Company issued a press release denying the allegations and stating that the article published by *TheStreetSweeper.org* had no merit. However, the article did not address the allegations related to the undisclosed paid stock promotions and market was unconvinced.

33. As a result of this news, shares of Uranium Energy continued to fall, dropping $0.62 or over 25.6% on unusually heavy volume, to as close at $1.80 on June 19, 2015. Over two trading days, shares fell $0.80 or over 30.7%.

34. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Uranium Energy securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of

their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Uranium Energy securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Uranium Energy or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Uranium Energy;

- whether the Individual Defendants caused Uranium Energy to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Uranium Energy securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Uranium Energy securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Uranium Energy securities between the time the defendants failed to disclose or

misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and

13

other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Uranium Energy securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Uranium Energy securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

47. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Uranium Energy securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Uranium Energy's compliance with SEC regulations.

48. By virtue of their positions at Uranium Energy, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

49. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Uranium Energy securities from their personal portfolios.

50. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Uranium Energy, the Individual Defendants had knowledge of the details of Uranium Energy's internal affairs.

51. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Uranium Energy. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Uranium Energy's business and compliance with SEC regulations. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Uranium Energy securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Uranium Energy's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Uranium Energy securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

52. During the Class Period, Uranium Energy securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be

disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Uranium Energy securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Uranium Energy securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Uranium Energy securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

53. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

55. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. During the Class Period, the Individual Defendants participated in the operation and management of Uranium Energy, and conducted and participated, directly and indirectly, in

the conduct of Uranium Energy's business affairs. Because of their senior positions, they knew the adverse non-public information about Uranium Energy's use of stock promoters to inflate the value of the Company's stock.

57. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Uranium Energy's financial condition and results of operations, and to correct promptly any public statements issued by Uranium Energy which had become materially false or misleading.

58. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Uranium Energy disseminated in the marketplace during the Class Period concerning Uranium Energy. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Uranium Energy to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Uranium Energy within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Uranium Energy securities.

59. Each of the Individual Defendants, therefore, acted as a controlling person of Uranium Energy. By reason of their senior management positions and/or being directors of Uranium Energy, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Uranium Energy to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Uranium Energy and possessed the power to control the specific activities which

comprise the primary violations about which Plaintiff and the other members of the Class complain.

60. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Uranium Energy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 29, 2015

Respectfully submitted,

**ABRAHAM, WATKINS, NICHOLS, SORRELS, AGOSTO & FRIEND**

By: */s/* Sammy Ford IV
Sammy Ford IV
Federal Bar Number: 950682
Texas Bar Number: 24061331
800 Commerce Street
Houston, TX 77002
Telephone: 713-222-7211
Facsimile: 713-225-0827

**POMERANTZ, LLP**
Jeremy A. Lieberman
C. Dov Berger
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

*Attorneys for Plaintiff*